And will you call the first case please? 3-11-0-1-9-8 In Marriage of Chancey Roepenack, Caliphate Derek Schrumpf v. Catherine L. Roepenack, Catholic by David M. Lynch Mr. Schrumpf, is it Schrumpf? Yes. Welcome, have at it. Thank you. Morning. May it please the Court. There are three issues before the Court today. The first issue is that the trial court erred in admitting the appraisal of a business that was authored by a third party. The third party was not called to testify as to the contents of that appraisal. The third party was also not qualified as an expert witness to author that appraisal. The standard of review before the Court is the abuse of discretion standard. Under In Re Marriage of Hunter, the party offering testimony must show that the expert has some special knowledge or experience in the area about which he expresses his opinion. Under Bachman v. General Motors, a reviewing court can grant a reversal of evidentiary rulings only when the error was substantially prejudicial and affected the outcome of the trial. Does it make any difference what the report is being offered for? I believe in this case the report, although the Court had ruled that it was being offered kind of for secondary evidentiary issues, not necessarily for what the appraisal itself said, the evidence shows that the questions that were asked by opposing counsel went straight to the issue of how much the appraisal actually was for. So I think that in this situation it does really matter that the appraisal went in for what the business was valued at. Was the content of that report important to your client's state of mind at the time he was negotiating the settlement? I believe it wasn't really important to his state of mind, no. The appraisal in question in this case was dated August 5, 2008. It was authored by a gentleman named Brad Glassie. My client, Chad Ropenack, had no input regarding the data or valuation method that was implemented in that report, and Mr. Glassie was never called to testify at trial. Although the trial court had ruled that the appraisal and the numbers it recited were not going to be accepted as the actual value or appraisals of the businesses in question, my client was continuously questioned as to the values, figures, and other content that were contained within that appraisal. In fact, during opposing counsel's closing argument, reference was made to the value of the businesses being in excess of a million dollars. My client's testimony put his equity or value in businesses at $258,750. Yeah, that's an interesting way of valuing a business. It seems to me they use this equation, this is what I invested in it, and this is what I owe, and the difference is the value. Yeah, I guess he was using that to say that's what his interest in the business actually was and what the business was worth just to him. Well, what's, I mean, what he invested in it doesn't have anything to do with the value, isn't value, fair market value minus, I mean, his interest would be, or his equity would be the fair market value minus the debt, wouldn't it? That would be the overall value of the business, yes, but again, we're just looking at what his actual value or equity in the business was. Well, what I said, what's what he invested have to do with the equity? It's the value minus the debt would be the equity, wouldn't it? Correct. Back to the value, back to my client's equity in businesses, though. The opposing counsel has stated in his brief that Mr. Ropanak testified that he had over $1.4 million invested in businesses and debt of only $300,000. My client's testimony was the total investment in the businesses between he and his partners was $913,000, not $1.4 million, and his total personal investment was $498,950. Well, again, what's investment got to do with equity? I mean, the value of something, you know, if I own this glass, my equity in this glass, if I own it, is what I can sell it to you for minus any debt I've got on it, outstanding loan, wouldn't that be that? Correct. So what I originally paid for the glass is irrelevant to my equity, isn't it? That's correct. But I guess what we're looking at here is the fact that the total value of the businesses from my client's testimony was $913,000, not $1.4 million. That's what he believed the businesses were valued at, so there's a $500,000 difference right there. So what we're asking to do on this first issue is basically overturn the court's ruling regarding the miscibility of that report and keep that report out. Second issue before the court today is that the trial court erred in finding by clearing convincing evidence that certain provisions of the marital settlement agreement were procured by fraudulent concealment and or misrepresentation. Standard of review here is the manifest weight standard. Under 735 LCS 5214-01, a petitioner has to affirmatively plead specific factual allegations supporting each of the following elements. The first element is the existence of a meritorious claim, the second element is due diligence in presenting that claim in the original action, and the third element is due diligence in seeking relief under Section 214-01. For fraudulent concealment, a petitioner has to show by clearing convincing evidence that the respondent intentionally misstated or concealed a material fact which the respondent both had a duty to disclose and the petitioner detrimentally relied on the respondent's statement of conduct. There also has to be an intent of the silent party to deceive the other party. The evidence also has to be such that it could not recently have been discovered at the time of or prior to the entry of judgment. In the Brode case, as in our case, the husband was represented by counsel and the wife was not. The wife in that case filed a 214-01 petition alleging that her husband failed to disclose or value marital and non-marital assets, most notably a profit-sharing plan from one of his businesses. The court held that the wife could have conducted her own investigation and hired her own attorney, and that she didn't diminish any claim that she had detrimentally relied on her husband's misrepresentations or concealments. Specifically in that case, the wife was advised to seek counsel but declined. She had the opportunity to voice her concerns at the prove-up hearing but instead represented the court that she understood the consequences of her decisions. And she also had 30 days after the entry of judgment to contact an attorney to protest the entered order but she did not do that. Let me ask you about one of the pieces of evidence that seems to be a key one with respect to the fraudulent concealment was the statement of income for, I can't remember the last year, about $100,000 as I recall, and then that was submitted to the court in the prove-up of the divorce, right? Yeah, talking about the child support calculation sheet. Yeah, and then it turned out 30 some days after that trial court entered its order, a tax return was filed showing that that was about half of what the real income was. I think what we would say regarding that is we don't have a problem with the court severing the child support issue. We think that there was a child support deviation that was set, it wasn't really set according to income, it was just a deviation. So we don't have a problem with the court striking the portion regarding child support. Well, I get that, but I guess isn't how much money he was bringing out of those sandwich shops maybe an indicator, too, of the value of the business? Yes. A business where you can take home $200,000 a year is probably worth more than one where you can only bring home $100,000. But your position is the Brode case, none of that's relevant, right? Right, and I guess what I would say with regard to what the value of the business is... Because with Brode, you have a complete hiding of an asset, right? I guess what I'd say in response, too, is that the opposing party here had an opportunity to know what kind of income was coming in. She was paying bills out of a joint checking account, so she knew how much money was coming in. Isn't that what Brode stands for? You just can't sit on your hands and you have to be an active participant? Right, and I believe she was an active participant. She did know what kind of money was coming in here, and knowing what she knew, she should have done a little more investigation. Well, let me ask you this. What's the law say about fraudulently misrepresenting something to a court? He went in and testified in court that that was his income, right? Correct. And then when he was asked about the document, he said, oh, my attorney prepared it. Did his attorney do his taxes? No. That would be a good thing for that attorney, because it seems to me that it's pretty clear that that document that he testified to in court and the proof of it was not accurate. And even though your opponent has a duty to be involved, your client has a duty not to fraudulently misrepresent facts to the court in proving things out. Wouldn't you agree with that? I agree with that, but again, I'd just say that the only issue that that goes to would be just the child support itself, which I'll address under our third part of our brief. Well, what would be the remedy of committing a fraud upon a court? I guess the remedy would be to retry that issue. And that would be the only remedy? I guess possible contempt as well. Possible? Probable contempt, I should say. Okay. On February 26th of 2009, which was about two months before, Ms. Ropenack asked my client for a divorce. She actually co-signed a loan for one of the businesses in the amount of $310,000. I know she testified that she did read the loan documents, but I don't believe that's sufficient to say she didn't know what was going on with the businesses and what kind of money was either coming in or being put out for those businesses. My client had all of his personal business financial documents located in a file cabinet in the sunroom of the marital residence. That was a room that both parties shared, both parties had an office in. She had access to those documents. She didn't make any effort to review any of those documents. There was a period of time of about six weeks after she asked for the divorce before he moved out. She could have looked at that stuff at any time, but she never did. She had access to the joint checking and savings accounts. She paid bills from the joint checking account at least once a month. At trial, both parties testified that she actually paid 90% of the personal bills by accessing that account. So she had a pretty good idea of what kind of money was coming into the household. She actually did consult with an attorney in June or July of 2009 before the entry of judgment in this case and before the marital settlement agreement was executed by both parties, and that attorney advised her to have child support looked at and have the businesses appraised, but then she went ahead and signed the documents without doing either one of those things. Was there some testimony she wanted to move on with her life? There was, and I believe there was also an issue of whether she had money to hire an attorney, but that attorney could have filed a petition for fees. Given the income disparity between the parties, I believe the court would have awarded her fees to be paid. Thank you. Let me ask you, is it of any import that she made the decision just to go along with what your client and his attorneys presented to her? Is it of any import that she did that in reliance on lies, misrepresentations? Well, even if she did, she knew what the income actually was. She may have relied on that $100,000 calculation in terms of what her child support would be set at, but as an overall picture, she knew what kind of money was coming into the household. So I think she didn't just rely on what my client said. She relied on her overall knowledge of what was going on with the income coming into the household. Quickly, I'll move on to Part 3. We believe the trial court erred in denying Mr. Roponak's request to sever and vacate only those provisions of the Merrill-Sutton Agreement related to child support. Based on what I've already said, I think the court should have considered the severability clause of the Merrill-Sutton Agreement and only stricken that portion of the Merrill-Sutton Agreement that pertained to child support. Again, the overall picture is that she knew what was going on financially in terms of money that was coming into the household. He may not have been forthright in terms of what her child support should have been. I think with that issue, we would agree that there wasn't really a basis for any deviation that was given in any of the documents. I think that issue itself needs to be put before the trial court, but I believe only that issue should have been stricken for Merrill-Sutton. Let's go back to the businesses. You make much ado about these appraisals, but why do you do that? I mean, isn't the duty upon her to find out under this facier of a line? Yes, it is. But we just, you know, I guess what we wanted to put out there was that we think the businesses are worth, just on their face, a lot less than what she has put forth to the court. Well, on your part, when it went back and these proceedings were going on in front of Judge Gilfelin, did your client go out and get a new appraisal? No, he didn't. And I'm not by far an expert on appraising businesses, but certainly one approach to appraising the value of a business is evaluating the income from the business. So it wouldn't be unreasonable for the trial judge to find that the misrepresentations about his income from the business related not only to child support, but also to give her a false picture of what this business was worth. Is that unreasonable for the judge to do that? No, that's not unreasonable at all. Thank you. Mr. Lynch? Good morning, guys. How are you today? Mark. The first question that the court asked is actually something I'd already caught up. But then the court did not enter that appraisal as the value. The quote on the admission to that appraisal was, this appraisal and the numbers it recites are not going to be accepted as the actual value or appraisals of those businesses. However, it will come in for the secondary, tertiary reasons dealing with state of mind and overall ultimate issue in the case as to whether or not fraud or deception was involved. We have to remember, she found out about these appraisals in the depositions two years after the divorce. Well, but didn't she have a duty to find out? How do you have a duty to find out something you never knew existed? That the business existed? That the appraisals had been done in the businesses. But the court ruled, and I think the court's actual order is very helpful in understanding how he got to where he got to. First of all, in regard to the businesses, and there's substantial testimony about Elizabeth telling her that they have no value, that there's nothing to them, that the debt exceeds the amount that's owed, that's in the record itself. But the court itself made a specific finding that he hid these appraisals from her so she wouldn't know about them. At the trial, he tried to testify that he told her. She denied it. But if you'll look at the findings of credibility in the court's order, they're very clear that he finds his credibility suffers in this case. This is why we... But once again, the real issue here is there fraud and deception going on. Of course, and that's what I'm saying. So all of this goes back to what is her obligation to find out, and was she induced fraudulently not to find out? And I think the court clearly ruled he was in two ways. One is, of course, the document prepared by the counsel's own attorney, misrepresenting specifically the income of the husband. We have to remember that in the year that this was filed, the year they got divorced, it was the first year the parties had never filed their return by April 15th. The first year. This was then filed 37 days after the decree, the tax return. She had no knowledge of their income that year because he had sole control, and the only one who had ever contacted the accountants made sure that it was more than 30 days after the decree before they even found out the tax return. The court specifically found this was a fraud. There was secondly, under our local court rules, you have to file an affidavit of income, assets, debts, and liability. The court specifically found this man did not do so. Third, they never asked the court to deviate from what the real income was. We have basically a housewife. And I'm not knocking housewife. I have a housewife as a wife. But this wife testified, and the court I think obviously believed her. He wanted me to sign a document at the bank. I had two kids in the van, and this was in the trial withdrawal testimony. I drove down. I dragged the two kids into the bank. There are less than 10 minutes. I signed whatever documents they threw at me, and I walked out. I never read one of them. I had two kids to raise. I'm the housewife. I'm the mother. I take care of these kids. He told me to sign something. I signed it. He took advantage of this young lady. She made $3,000 a year as a cheerleading coach at the time of the divorce. He got 95% of the assets, paid less than half of what he should have paid in child support, gave her maintenance, which automatically reduced in six months to the point where in three years she had nothing. The total property settlement she got was approximately $40,000, and she was ordered to pay half of that property settlement into a trust fund to the kids. Now, you're saying everything she agreed to was because of thought. I mean, that's what the court found. Well, the court also found that the, and specifically, She's a college graduate, is she not? Oh, certainly. It was not so subtle insinuation. He would contest full custody if she did not go along with his planned settlement, and that's fined him by the court. There was also threats involved. This is not just a gee whiz. I didn't bother to do this. The lady met with an attorney in less than 10 minutes. He wanted $4,500 in cash. I don't have it. She left. He never mentioned it. There's not one mention of him saying, well, I can get fees by filing a petition. She goes, I don't have any money. I got to go home. He then gives her these documents. There's signage here. He shouts for it based on what the law says. Actually, it has to have what it's supposed to be. Oh, by the way, the business is worth nothing, even though he's holding an appraisal in his hands that he has, and the court obviously finds she never filed. He never saw of over a million dollars. But once again, the number isn't the important thing. The important thing is he didn't even let her know it existed. He never even heard of it. She never had no knowledge of it. She saw it for the first time, heard of it for the first time, while I was taking his deposition two and a half years after the divorce took place. She went to an attorney after the divorce. We then said, you need to see an attorney that does dissolutions, and that's how I come to be involved in the case. She was desperate. She'd lost everything she had, $250 a month to live on. That's less than half of the child support she's supposed to have. And if you read the ten separate reasons the court had in its judgment of dissolution for reopening this case, we have to remember, of course, it's a manifest waste of the evidence case, and the credibility of witnesses in this case clearly, clearly has been found to be in my client's favor. There was no abusive discretion. If you find that, one, he lied to her, and I'm not going to say the attorney intentionally did this. I don't know. The attorney knew his income. But he certainly knew he was lying to her when he submitted this calculation of child support. He lied to her by omission, and not telling her he's sitting here holding a very large, an appraisal saying it's worth a large amount of money. Well, if you're in litigation with somebody, what's your duty? Well, what litigation would we really have here? Bear with me for a minute. Sure. You're in litigation with somebody, okay? What obligation do you have to answer questions that have never been asked? Well, as the court rule says, and the court specifically finds as one of its findings, that the affidavit of income and expenses, which lists your assets, and is required by our local court rule to be filed, she never filed one because all she filed was an entry, and that was the end of her involvement. She knew no more about it, had no notice of the hearing. And that's also a finding by the court. He didn't disclose in that affidavit, which our local court rule requires, the ownership of those businesses, that local court rule also requires you list the value of your assets. He never did that either. So not only did he defraud her, he, if so facto, defrauded the court by not telling the court what was there. Do you think this judge would have signed that judge? Not this judge, because Judge Guilfoyle was the judge that divorced him. But the judge would have signed that if he'd listed the assets showing he had $2 million in assets and she had $40,000? I don't think so. This was a concerted effort to set up a little girl who had no money, two little kids to take care of, and was presented a piece of paper with no changes ever made to it, signed it, never heard from anybody again, didn't even know the hearing took place until after it took place. There's a finding in that too. And suddenly, six weeks later, or whenever after the judgment's entered, finds out she has nothing. No money, no job, no education. And it's in the evidence again. She went to college and now is a teacher, actually, four years after the divorce out of her own pocket from large student loans. But that's another story. This little girl had nothing. She knew nothing. She had 10 minutes with an attorney, said give me a check for $4,500 or nice to have met you. And that's her only involvement with the system. And he walks out with a million and a half, she walks out with $40,000 and a half of what she should have gotten in child support. And maintenance, which terminates automatically without review. If that's not fraud, I'm in the wrong business. I don't file too many 214-01 petitions because I know the burden is high. I know you can't just walk in and say, gee whiz, this is unfair. This is not unfair. This is grotesque. And the children suffered because they didn't get what they should have gotten, no support. Everyone lost in this case except for Chad, who had control of all the assets. And if you read that, filed the tax return late after 37 days, never done it before. Why was that? You don't want her to find out in 30 days. She could come right back in and reopen it if he gave her a thing showing he made $200,000. He had an incentive to file the tax returns late, to not show her the estimates of the value, to give her a false statement and submit that false statement to the court without deviating a child support, to reduce the child support. The only winner here is the person who hid the assets, never disclosed them. And all the arguments you heard by counsel, the judge heard these at the trial, you found them not to fit, not to be true. Okay. But the competing interest is the case law does say that you've got a duty to discover those things which are discoverable. That's true. And, for example, the late, you said this was the first time they'd ever filed their tax returns late. That maybe made the B.S. detectors go off. And some of these, you know what I'm saying? I don't know where she took them. Sometimes people make bad contracts for themselves, and they have to live with them. Oh, I understand. But under that theory, no 214-01 motion would ever stand. The court specifically found that she had used due diligence in seeking the request of relief in this individual case. He heard the testimony. He obviously gave testimony on accuracy and honesty of the witnesses. There are times that there's a reason that you use abusive discretion for a reason. And in this case, this court heard the witnesses, heard five or six witnesses, not just one or two, made a finding as to who's telling the truth, made a finding who wasn't, made a finding that this man intentionally defrauded this young lady. Those are factual findings. Yes, they are factual. So we're not abusing discretion. We're at the fact of the appraisal of abuse of discretion. I think the omission of abuse of discretion, I think the whole argument is the value isn't the issue, the fact that he did it is the issue. That's all the court admitted before. Well, the question is where do you balance an agreement that's one-sided as to whether or not that one-sidedness is a result of fraud. That's the whole issue before this court, and that's what this judge has to conclude to make the finding that he had made. That's exactly right. This judge in this case found these facts to be such that he clearly defrauded this lady intentionally, not by, as I mentioned earlier, fraud can be an act of commission, obviously. But in this case, I think especially with the valuation of the business, the tax returns, this is a fraud of omission. He intentionally did not allow her access to information. If she got an attorney, if she had $4,500, we might not be standing here today. If she had an attorney who had said to her, let me just file a petition and get fees awarded, we might not be standing here today. But the attorney she went to said, give me a check. She didn't have $1.50, and as she said herself, she got, I think, and I may be wrong on this number, I'm not sure, I think it was $200 a week to care for herself and the kids in the way of cash. I might be wrong on that number. I'm sorry on that. But certainly not enough money that she could ever afford $4,500, and she had no access to $4,500. If you're alleging fraud, your burden then is to prove that by clearing convincing evidence. I think so. And then our standard review is whether the judge is… It's clearly manifest, whether the evidence or abuse of discretion. The cases in the 214-01 and the previous 72 section, they both use both those languages. Okay. I was just… Let me… Sometimes I talk painfully slowly, but bear with me and let me get a question out. And so then the issue becomes, was the court's finding of fraud? Was the court's finding that you proved fraud by clearing convincing evidence against the manifest way? Correct. Thank you. Anything else? Thank you very much. All right. Thank you, Mr. Lynch. Mr. Shulman, any rebuttal? No rebuttal, Your Honor. Okay. All right. Well, thank you both for your arguments here today. The matter will be taken under advisement. A written disposition will be issued. And right now…